IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　v.<br><br>TRAVIS RAY FEEBACK,<br>　　　　　　Defendant. | Criminal Nos.　4:20-cr-048<br>　　　　　　　　　4:21-cr-079<br>　　　　　　　　　4:21-cr-163<br><br>GOVERNMENT'S<br>SENTENCING MEMORANDUM |

I.    INTRODUCTION ................................................................................................. 1
II.   PROCEDURAL BACKGROUND ...................................................................... 1
III.  SENTENCING CALCULATION ....................................................................... 2
      A.   Statutory Maximum and Minimum Sentence ......................................... 2
      B.   Disputed Guideline Issues ....................................................................... 3
           1.   Official victim enhancement (USSG §3A1.2(a)(1)(A)) .................. 3
           2.   Serious bodily injury enhancement (USSG §3A1.2(c)(2)) ............ 4
      C.   Sentencing Guidelines Calculation ......................................................... 5
IV.   SENTENCING FACTORS, REQUEST FOR AN UPWARD VARIANCE, AND
      GOVERNMENT'S RECOMMENDATION ....................................................... 7

## I.   INTRODUCTION

Defendant Travis Feeback threatened various government employees over a span of months, including threatening to shoot and kill them. While in custody, he assaulted jail staff members twice. The Court should sentence Defendant to 150 months in prison.

## II.  PROCEDURAL BACKGROUND

In case 4:20-cr-048, Defendant pleaded guilty to two counts of interstate communication of a threat, in violation of Title 18, United States Code, Section 875(b). Presentence Investigation Report, ECF No. 129 ¶¶ 1, 3 (hereinafter

"PSR").[1] In case 4:21-cr-079, Defendant pleaded guilty to assaulting, resisting, or impeding certain officers or employees, in violation of Title 18, United States Code, Section 111(a) and 111(b). *Id.* ¶¶ 2–3. In case 4:21-cr-163, Defendant pleaded guilty to assaulting, resisting, or impeding certain officers or employees, in violation of Title 18, United States Code, Section 111(a) and 111(b). *Id.* ¶ 4–5. There was no plea agreement in any case, no counts to be dismissed, and no forfeiture. *Id.* ¶ 6.

There are two outstanding legal objections to the PSR related to the victim enhancements. The government attaches two sentencing exhibits:

- Exhibit 1: Video of March 16, 2021, assault (1 minutes, 47 seconds)
- Exhibit 2: Video of October 18, 2021, assault (3 minutes, 1 second)

The government anticipates that at least one victim will address the Court at sentencing.

### III. SENTENCING CALCULATION

#### A. Statutory Maximum and Minimum Sentence

Based on Defendant's plea of guilty to interstate communication of a threat, Defendant is subject to a maximum sentence of twenty years in prison and up to three years of supervised release. A fine of up to $250,000 is permitted, in addition to the $100 special assessment. PSR ¶¶ 145, 148, 154, 155.

Based on Defendant's pleas of guilty to assaulting, resisting, or impeding certain officers or employees, Defendant is subject to a maximum sentence of twenty

---

[1] The substantive paragraphs of the PSRs in each of the three cases appear identical. *See* ECF No. 129, 4:20-cr-048; ECF No. 51, 4:21-cr-079; ECF No. 26, 4:21-cr-163.

years in prison and up to three years of supervised release. A fine of up to $250,000 is permitted, in addition to the $100 special assessment. *Id.*

### B. Disputed Guideline Issues

#### 1. Official victim enhancement (USSG §3A1.2(a)(1)(A))

Defendant disputes whether he qualifies for the three-level official-victim adjustment. Guideline Section 3A1.2(a)(1)(A) applies where the victim was a government officer or employee, and the offense was motivated by such status. There is no dispute that Defendant's threats were directed to government officers or employees. The notes instruct that "motivated by such status" "means that the offense of conviction was motivated by the fact that the victim was a government officer or employee . . . ." USSG §3A1.2(a)(1)(A), n.3. "[T]he victim's official status need not be the sole motivation for the offense." *United States v. Sulik*, 929 F.3d 335, 337 (6th Cir. 2019); *see also United States v. Abbott*, 221 F. App'x 186, 189 (4th Cir. 2017).

Here, Defendant threatened multiple people across various government entities. Defendant's threats concerned benefits he believed he was owed by the government. When he did not get the answers he wanted from one government agency's employees, he went on to threaten another government entity's employees. Defendant's threats specifically named several individual employees. PSR ¶¶ 11, 13, 14, 23, 25-27. Much like in the case of *United States v. Conway*, Defendant's plan was not just "a general harangue against anybody and everybody," his plan "hinged on" threatening government officials so he could extort benefits and government money from them. 713 F.3d 897, 902 (7th Cir. 2013). Defendant actions were entirely

3

motivated by the official status of the individuals he threatened as government employees. After all, it was only from the government that Defendant could get what he demanded.

The commentary notes state that the enhancement does not apply "where both the defendant and the victim were employed by the same government agency and the offense was motivated by a personal dispute," USSG §3A1.2, n.3, but that is not the case here. Defendant was no longer employed by the same government agency as his victims and his threats spanned multiple entities. Further, Defendant's threats did not arise out of a personal dispute. This comment note is not applicable or persuasive.

2.  Serious bodily injury enhancement (USSG §3A1.2(c)(2))

Defendant also challenges whether the serious bodily injury enhancement applies. Guideline section 3A1.2(c)(2) applies "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowingly or having reasonable cause to believe that a person was a prison official, assaulted such official while the defendant . . . was in the custody or control of a prison or other correctional facility." There is no dispute that Defendant knew the person he assaulted was a prison official and that he was in custody at the Polk County jail during the assault. "Substantial risk of bodily injury" "includes any more serious injury that was risked, as well as actual serious bodily injury (or more serious injury) if it occurs." USSG §3A1.2, n.4(B). It "applies in circumstances tantamount to aggravated assault." *Id.* §3A1.2, n.4(A). For example, in *United States v. Hill*, the Eighth Circuit applied the enhancement where no one was injured, but the defendant repeatedly attempted to "retrieve his

firearm from his waistband at least three times." 583 F.3d 1075, 1078–80 (8th Cir. 2009) (considering whether the offense involved a substantial risk of serious physical injury or death in the context of a §2K2.1(b)(6) enhancement, as well under §3A1.2).

Defendant's actions not only *created* a substantial risk of serious bodily injury but actually *caused* serious bodily injury to the jail officials. During the March 2021 assault, he punched the victim over twenty times. Gov't's Ex. 1. The unobjected to facts in the PSR confirm that the Defendant caused the victim to suffer a concussion and a sprain of a ligament of the cervical spine. PSR ¶ 35. During the October 2021 assault, Defendant again physically assaulted a jail official by punching him in the temple. Gov't's Ex. 2. Defendant caused the victim to suffer a fractured right big toe. PSR ¶ 39. The six-level enhancement was properly applied.[2]

### C. Sentencing Guidelines Calculation

The PSR correctly calculates the advisory guidelines range in this case as follows:

<u>4:20-cr-048 (Interstate communications with intent to extort)</u>

| | |
|---|---|
| USSG §2B3.2(a) (base): | 18 |
| USSG §2B3.2(b)(1) (threat of death) | +2 |
| <u>USSG §3A1.2(a) (official victim)</u> | <u>+3</u> |
| Adjusted offense level: | 23 |

---

[2] Should the Court decline to apply this enhancement, the government requests the Court apply a six-level enhancement under §3A1.2(b) (the official victim enhancement) for this offense. It is undisputed that the victim of this offense was a government officer or employee, and that Defendant's offense was motivated by such status.

<u>4:21-cr-079, 4:21-cr-163 (Assaulting, resisting, or impeding certain officers or employees)</u>

| | | |
|---|---|---|
| | USSG §2A2.2(a) (base): | 14 |
| | USSG §2A2.2(b)(3)(A) (bodily injury) | +3 |
| | USSG §2A2.2(b)(7) (§111(b) offense) | +2 |
| | <u>USSG §3A1.2(c)(2) (substantial risk serious bodily injury) +6</u> | |
| | Adjusted offense level: | 25 |

<u>Multiple Count Adjustment</u>

| | | |
|---|---|---|
| | USSG §3D1.4 (units increase) | +3 |
| | <u>Acceptance</u> | <u>–3</u> |
| | Total offense level | 25 |
| | Criminal History Category | II (3) |
| | Guideline Sentencing Range: | 63–78 months |

The government agrees this is the accurate guideline sentencing range and that the charges were properly grouped under the guidelines. *See* USSG §3D1.1, n.1 ("For purposes of sentencing multiple counts of conviction, counts can be . . . (b) contained in different indictments . . . for which sentences are to be imposed at the same time."). However, as noted below, these three crimes are separate offenses that deserve separate punishments. *See* PSR ¶ 45. They involved separate victims, were committed on separate dates, and were not part of a common scheme or plan. *Cf.* USSG §3D1.2 (listing considerations to group counts "involving substantially the same harm).

6

## IV. SENTENCING FACTORS, REQUEST FOR AN UPWARD VARIANCE, AND GOVERNMENT'S RECOMMENDATION

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   B. to afford adequate deterrence to criminal conduct;
   C. to protect the public from further crimes of the defendant; and
   D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a).

The government recommends the Court impose a sentence of 150 months, followed by a three-year term of supervised release. The government requests the Court impose the sentences for each charge consecutively based on their independent guideline calculations.[3] The government also argues that a 150-month sentence is appropriate as an upward variance under the Section 3553(a) factors.

---

[3] Considered on their own, the offenses in case 4:20-cr-048 result in a total offense level of 20 and an advisory sentencing range of 37 to 46 months. The offense in case 4:21-cr-079 results in a total offense level of 22 and a sentencing range of 46 to 67 months. The offense in case 4:21-cr-163 results in a total offense level of 22 and a sentencing range of 46 to 67 months. Imposed consecutively, this results in a total sentencing range of 129 to 180 months. Utilizing that range, the government requests a middle-of-the-guideline sentence.

In December 2019, Defendant went to Camp Dodge and confronted employees about government benefits he believed he was owed. Defendant had been discharged from National Guard service for being absent without leave and had recently resigned from his employment at the VA while an investigation of his threatening behavior to his co-workers was pending. At Camp Dodge, he yelled and swore at two employees. He said the National Guard had "thirty days" to get him his money and that he would be back.

Defendant was barred from visiting Camp Dodge and wrote profane and threatening emails to National Guard employees during the several months leading up to his arrest. In one email in January 2020, Defendant wrote, in all caps, "I hope a disgruntled pissed off veteran will come through Camp Dodge and open a case of whoop ass on you worthless fake fucks or pull a McVeigh and blow you to hell." PSR ¶ 16. Later he said, "Because I feel like Tim McVeigh felt when he blew up some buildings." *Id.* ¶ 17(d). In another email in March 2020, Defendant said "Or I'm going to fucking kill some people until I am taken seriously. I might enough start with you. It might start the VA . . . When I come back to Camp Dodge I am coming for both of you . . . I am going to take out whoever I can at the USPFO office . . . . I know the layouts of the whole building and campus in both places. Do not fuck with me." *Id* ¶ 26.

Over several months, Defendant also relentlessly contacted other government entities, including the Defense Finance and Accounting Services (DFAS) office and Senator Grassley's office. In February 2020, Defendant wrote DFAS, in all caps, "I'll

8

come up to Cleveland and show you motherfuckers what Satan looks like." PSR ¶ 21(b). In his correspondence to Senator Grassley's office, Defendant said "[T]his is the trench I'm willing to kill and die in," *id.* ¶ 22, and "I'm the killer, the bomber, the arsonist whatever it takes to get your attention," *id.* ¶ 24. Defendant also called DFAS numerous times. He often used racial slurs and insulted the representatives he spoke with. *Id.* ¶ 19.

On March 25, 2020, Defendant posted a mirage of threatening comments on the Facebook page of his former employer—VA Central Iowa Health Care Systems—including "[E]ither you or that damned military base is gonna get shot up if I don't get my 100% AND my military retirement," "I'm gonna sit outside [Camp Dodge] with my . . . scoped rifle at 3:30 and pick off all the overpaid useless fucks over there," and "You had better get me my fucking money . . . Or I'm going to come make people bleed. You had better have your rifles ready." PSR ¶ 27(c), (d), (g), (h). When he was arrested the same day he posted these threats, Defendant said "My mind is fine except that I'm fucking pissed and this is what [it] takes. E-mailing and threatening people at two government organizations that have made me fucking unhappy. . . . I have their attention now, don't I? This is what I want. I laid it all out there like a fucking terrorist that uses fear and intimidation because that's all I have." *Id.* ¶ 29.

While in jail, Defendant urged a friend to "get a hold of fucking 60 Minutes," and that he would have to "go big or go home." PSR ¶ 30. On May 18, 2020, Defendant told a friend "I'm scared that I'm gonna end up fucking beating someone to death . . . ." *Id.* ¶ 31(i). And, on March 16, 2021, Defendant assaulted a jail staff

member. When Defendant did not get the answer he wanted about missing items, he punched a jail detention officer over twenty times. *Id.* ¶ 33. He then spit at the officers who tried to restrain him. *Id.*

Seven months later, Defendant assaulted a second jail detention officer over laundry Defendant said he was missing. Defendant again punched the jail staff member and caused him to fracture his toe. *Id.* ¶¶ 36–39. Defendant's assaults were in addition to four other jail violations. *Id.* ¶ 7.

Further, Defendant has a history of issuing threats. In 2014, he was convicted of harassment in the first degree for threatening to kill his father. PSR ¶ 81. When he was arrested, Defendant had a Glock 23 pistol and four fully loaded magazines, a frightening demonstration of Defendant's intent to follow-through with his threats and his ability to access guns. *Id.* In 2019, Defendant was convicted twice of harassment in third degree for threats he made to co-workers at the VA. *Id.* ¶¶ 84–85. He traveled to the victims' homes and told them he was going to kill them. *Id.* Some of these individuals continued to be threatened by Defendant as part of his conduct in this case. Defendant has two alcohol-related convictions. *Id.* ¶¶ 82–83. Defendant admits to using marijuana daily, and to abusing cocaine and opioids in the past. *Id.* ¶¶ 114, 115, 120, 122.

The guidelines do not capture Defendant's conduct in this case. He specifically named multiple individual employees in his threats. USSG §2B3.3, n.7. His threats are not adequately described simply as "threats to extort." He threatened a mass shooting at Camp Dodge, the VA, and DFAS, and directed his threats to those

employees, spelling out the type of weapon he would have and that he knew the layout and where people would be. And when these employees offered to help or did not respond, Defendant repeated his threats. Defendant acknowledged his actions were terroristic. For this conduct alone, an upward variance from the guideline range is warranted.

Defendant's actions demonstrate a complete disregard for the law and a sincere risk to the public. Defendant's conduct is inexcusable. Defendant's mental health history is not a mitigating factor. Defendant made explicit and persistent threats to multiple government agencies and specific employees over several months. His words and actions terrified the people he directed them to and with good reason. Defendant acknowledged repeatedly that he would do whatever it took to get what he wanted. After his arrest for the instant offense, even being incarcerated failed to deter Defendant from his violent conduct, specifically when Defendant did not get what he wanted, he punched a jailer more than twenty times. Defendant did not stop there. On another occasion, Defendant assaulted a second jailer over laundry. Defendant said "I fought you over some colored pencil and I fought you over some books, so you think I'm not going to fight you over some clean clothes?" a clear reference to his earlier assault and a manifestation of his intent to use violence to resolve disputes.

Whether in or out of custody, medicated or not, Defendant's fervent threats and violent conduct are unfettered. Defendant is clearly a risk of danger to those around him and has proven that time and time again. Defendant continuously chooses to use violence as his solution without any regard to others and has shown

no remorse for his actions. The disturbing nature and circumstances of all three offenses and the personal history and characteristics of Defendant justifies an upward variance and consecutive sentences resulting in a total sentence 150 months, which is necessary to accomplish the goals of sentencing and protect the public.

WHEREFORE, the government requests the Court consider this sentencing memorandum in determining the final sentence of Defendant.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:     */s/ MacKenzie Tubbs*
MacKenzie Benson Tubbs
Assistant United States Attorney
U.S. Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, IA 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: mackenzie.benson.tubbs@usdoj.gov

CERTIFICATE OF SERVICE
I hereby certify that on January 26, 2022, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:
____U.S. Mail ____ Fax ____Hand Delivery
__X__ECF/Electronic filing     ____Other means
ASSISTANT UNITED STATES ATTORNEY
By: */s/ MacKenzie Tubbs*